IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CONNIE ALEXANDER,                          )
                                           )
            Plaintiff,                     )   Case No. CV05-1632-HU
                                           )
        vs.                                )
                                           )           OPINION AND ORDER
EYE HEALTH NORTHWEST, P.C.,                )
            Defendant.                     )
_____)

Matthew B. Duckworth
Busse and Hunt
621 S.W. Morrison Avenue
Suite 521
Portland, Oregon 97205
      Attorney for plaintiff

John M. Kreutzer
Clay D. Creps
Bullivant Houser Bailey
888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204
      Attorneys for defendant

HUBEL, Magistrate Judge:

This is an action for discrimination on the basis of perceived disability, in violation of the Americans with Disabilities Act, 42 U.S.C. § 12110 *et seq.* (ADA); violation of the federal Family Medical Leave Act, 29 U.S.C. § 2601 *et seq.* (FMLA) and the Oregon Family Leave Act, Or. Rev. Stat. § 659A.100 *et seq.* (OFLA); and wrongful discharge.

Defendant moves for summary judgment.

## Factual Background

Plaintiff Connie Alexander was employed by the defendant, Eye Health Northwest, P.C. (Eye Health) from October 1987 to September 28, 2004. She took medical leave, for vertigo and a torn meniscus in her knee, beginning July 7, 2004. That leave expired on September 28, 2004.[1]

When Ms. Alexander began her leave, she signed a "Request for Family Medical Leave" form (Leave Request). Deposition of Connie Alexander (Alexander dep.) 37:20-22; Alexander dep.

---

[1] Ms. Alexander had previously taken medical leave. In November 1988, she was out for six weeks, for a hysterectomy. In 1993, she took six weeks of leave for surgery on a ruptured disk in her neck. In August 1995, she took leave for surgery to "finish the hysterectomy." In about 1997, she had surgery for gallstones and took about two weeks off. In January 1999, she had another surgery, for which she took medical leave. Plaintiff also took leave after her husband's death, from August to October 2001. Ms. Alexander testified that she returned to work without any alleged discrimination after each of these leaves. Alexander dep. 130:17-20.

2   - OPINION AND ORDER

Exhibit 8 (attached to Plaintiff's Concise Statement of Fact as Exhibit 14). The Leave Request was completely filled out when Ms. Alexander signed it except the handwritten notation, "9/28/04" and "timed out," which were written in later. Alexander dep. 76:22-77:7. The form states that Ms. Alexander is eligible for up to 12 weeks of unpaid leave. Exhibit 14. The form also states that Ms. Alexander is to provide reports of her status and intent to return to work every 30 days. Id. Ms. Alexander has testified that she understood that the maximum leave to which she was entitled was 12 weeks, and that she could take the full 12 weeks, but that she thought 12 weeks was the same as three months, so that her leave would expire on October 7, 2004. Alexander dep. 77:15-17, 79:11-13, 134:25-135:2.

Eye Health held administrative meetings every week, which typically included discussions of who was out on leave and when the leave expired. Deposition of Cynthia Rowe (Rowe dep.) 11:15-20. The agenda for the administrative meeting of September 16, 2004, stated that Eye Health currently had three people out on leave whose expiration dates were September 20, 2004, September 28, 2004 [Ms. Alexander's expiration date], and October 1, 2004. The agenda contained the following notation, "If these employees do not return on or before their expiration dates, we do not have to hold their positions for them." Rowe dep. Exhibit 1. When September 28, 2004 arrived, Deirdre Dilbeck, Ms. Alexander's

supervisor, told Lonnie Okrasinski, Human Resources Manager, that she had not heard from Ms. Alexander while she was on leave. Deposition of Lonnie Okrasinski (Okrasinski dep.) 15:17-25. Ms. Alexander disputes this statement, saying that while she was on medical leave, she called the defendant's offices every two to three weeks, Alexander dep. 43:9-44:2, and that she left a message for Ms. Dilbeck about her knee surgery, id. 98:2-12. Furthermore, Ms. Alexander says that in a telephone conversation "on about" September 28, 2004, she told Ms. Dilbeck she was going to the doctor on October 1, 2004, and would be released to return to work that date. Declaration of Connie Alexander ¶ 4. According to Ms. Alexander, in response, Ms. Dilbeck told her to contact Ms. Okrasinski when she was ready to come back to work. Alexander dep. 59:13-17.

Ms. Alexander was released to work by her doctor on October 1, 2004, but states that had she known her leave was up on September 28, she could have made an earlier appointment with the doctor and obtained a release sooner. Alexander Declaration ¶ 3. Eye Health did not notify Ms. Alexander on or before September 28 that her leave was up; rather, on September 30, 2004, it sent her a letter stating that as of September 28, 2004, Ms. Alexander had used all her available leave and that it had been decided not to hold her position open. Alexander dep., Exhibit 9. According to the testimony of Eye Health administrator Cynthia Rowe, the

decision to terminate Ms. Alexander was made by herself, Deirdre Dilbeck, operations manager, and Lonnie Okrasinski, human resources manager. Rowe dep. 8:14-21.

Ms. Alexander went into the office on Monday, October 4, after she had received the letter, to get her personal belongings and to ask Ms. Dilbeck if there was any other job available for her.

### Standards

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is not proper if material factual issues exist for trial. Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied,* 116 S.Ct. 1261 (1996). On a motion for summary judgment, the court must view the evidence in the light most favorable to the non-movant and must draw all reasonable inferences in the non-movant's favor. Clicks Billiards Inc. v. Sixshooters Inc., 251 F.3d 1252, 1257 (9th Cir. 2001).

The moving party has the burden of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go

beyond the pleadings and identify facts which show a genuine issue for trial. Id. at 324. Assuming that there has been sufficient time for discovery, summary judgment should be entered against a "party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

## Discussion

1.   The "perceived as disabled" ADA claim

Ms. Alexander has alleged that "Defendant discriminated against Plaintiff by discharging her because it perceived her to be a disabled person." Amended Complaint, ¶ 9.

The ADA, and Oregon's corresponding statute, which is interpreted consistently with the ADA, see, Wheeler v. Marathon Printing, Inc., 157 Or. App. 290, 301 (1998) and Snead v. Metro Prop. & Cas. Ins. Co., 237 F.3d 1080, 1087 (9th Cir. 2001), prohibit an employer from discriminating "against a qualified individual with a disability because of the disability." 42 U.S.C. § 12112(a); Or. Rev. Stat. 659A.112. The ADA defines disability as follows:

(A)   a   physical   or   mental   impairment   that substantially limits one or more of the major life activities of such individual;

(B) a record of such an impairment; or

(C) being regarded as having such an impairment.

42 U.S.C. § 12112(a). The same definition applies to Oregon's statute. Or. Rev. Stat. 659A.100(a). A person is "regarded as" disabled within the meaning of the ADA if the employer mistakenly believes that a person has a physical or mental impairment that substantially limits one or more major life activities; or mistakenly believes that an actual, non-limiting impairment substantially limits one or more major life activities. Sutton v. United Air Lines, Inc., 527 U.S. 471, 489 (1999); see also Coons v. Sec'y of the U.S. Dept. of the Treasury, 383 F.3d 879, (9th Cir. 2004)("In 'regarded as' cases, the employer must perceive the individual as having an actual disability").

Thus, to establish her claim that Eye Health regarded her as disabled, Ms. Alexander must come forward with some evidence that Eye Health mistakenly believed she was substantially limited in a major life activity. See Walz v. Marquis Corp., 2005 WL 758253 at *10 (D. Or. 2005)(plaintiff failed to produce any evidence that employer perceived he was substantially limited in a major life activity; court awarded employer summary judgment).

Eye Health asserts that Ms. Alexander has come forward with no evidence that Eye Health perceived her as substantially limited in any major life activity. Eye Health points to Ms. Alexander's deposition testimony that she did not know what disability Eye Health allegedly perceived she had, Alexander dep. 52:24-53:1; that she does not know what impairments allegedly

formed Eye Health's belief that she was substantially limited in any major life activity, id. at 51:19-21; and that no one at Eye Health ever told her that anyone at Eye Health believed she was substantially limited in any major life activity. Id. at 53:25-54:4. At her deposition, Ms. Alexander also testified:

> Q:  Has anyone from Eye Health Northwest told you that Eye Health Northwest perceived that you were disabled?
> A:  Just that they had said that I was going out--I was not coming back, I was going on disability.
> Q:  Okay. Was that a rumor that you were going out on disability?
> A:  Yes.
> Q:  And do you know who started that rumor?
> A:  I don't know who started it, no.
> Q:  Do you know when it started?
> A:  No, not the exact date.

Alexander dep. 53:2-13.

Ms. Alexander's evidence that she was perceived as disabled is the following:

1.  Ms. Alexander's deposition testimony that when she came into the office after receiving her termination letter and asked if there was any other job available for her at Eye Health, Ms. Dilbeck asked Ms. Alexander how she was doing, then asked if Ms. Alexander had ever considered going on disability. Alexander dep. 45:11-13, 84:4-6.

2.  In November 2004,[2] Ms. Alexander was asked how she was

---

[2]  The conversation occurred after Ms. Alexander had been terminated. Bentley dep. 12:15-21. At her deposition, plaintiff testified, apparently in error, that this conversation occurred in

doing, and another employee responded, "Oh, that's
right. You had surgery." According to Ms. Alexander,
Robert Bentley, M.D., president of Eye Health, said,
"Yeah, your knee, your neck, your this and that and
other surgeries." Alexander dep. 129:19-130:6.

3.    Ms. Alexander's deposition testimony that in the
spring, before Ms. Alexander went on FMLA leave, Vicki
Armstrong, Eye Health operations manager, and Ms. Rowe
told her they wanted Ms. Alexander's "float" position
to be filled by someone who could be there all of the
time. Alexander Declaration ¶ 9.

Plaintiff asserts that these statements, when combined with
the evidence that Eye Health knew of her prior health issues, are
sufficient to raise an issue of fact as to whether Eye Health
perceived Ms. Alexander as substantially limited in the major
life activity of working, and terminated her on that basis.

An inability to perform a single, particular job does not
constitute a substantial limitation in the major life activity of
working. Deppe v. United Airlines, 217 F13d 1262, 1265 (9th Cir.
2000). Thus, to the extent that the evidence Ms. Alexander relies
on is argued to suggest the employers' belief that she was not
able to perform her current job as a "float" because she could
not be there all of the time, the evidence is insufficient to

_____

November 2005. Alexander dep. 129:21.

establish a "regarded as" claim.

Dr. Bentley's offhand reference to surgeries on "your knee, your neck, your this and that," as reported by Ms. Alexander, is insufficient to create a genuine issue of material fact on whether Dr. Bentley regarded Ms. Alexander as having a physical impairment or impairments that substantially limited one or more of her major life activities. Compare Rotter v. ConAm Management Corp., 393 F. Supp. 1077 (W.D. Wash. 2005)(e-mail from vice president of company saying, "Eugene Rotter is assistant maintenance at Hampton Bay. He is ADA and in the past has complained to Chris that I have been discriminatory" insufficient to show a "regarded as disabled" claim in absence of any evidence about what was meant by the brief reference or that vice president regarded plaintiff as disabled as defined by the statute.)

Ms. Dilbeck's comment about whether Ms. Alexander had ever considered going on disability is not sufficient to generate a genuine issue of material fact. In Coons, plaintiff asserted that his employer regarded him as disabled because his supervisor wrote him a letter stating, "You [Coons] may be eligible for disability retirement if you are unable, due to disease or injury, to render useful and efficient service in your position." 383 F.3d at 886. The court observed, "Clearly the [employer] was suggesting only that if Coons is disabled as he claims to be, he

may be able to obtain disability benefits. Coons's supervisor does not state that he considers Coons to be eligible for such benefits, or that Coons is disabled..." Id. The same observation applies here. Ms. Dilbeck did not say that she considered Ms. Alexander disabled, or eligible for disability benefits.

Ms. Dilbeck, Dr. Bentley, Administrator Cynthia Rowe, and Human Resources Manager Lonnie Okrasinski all testified that at no time did they believe Ms. Alexander was disabled or substantially limited in any major life activity. Dilbeck Dep., Page 18, lines 19-21; Bentley declaration, ¶4; Rowe declaration, ¶4; Okrasinski declaration, ¶4.

Ms. Alexander has not met her burden of producing sufficient evidence of defendant's perception of her as disabled to create a genuine issue of material fact.  I grant defendant summary judgment on the ADA claim for disability discrimination and order that this claim be dismissed.

2.   Interference with FMLA and OFLA rights

Ms. Alexander's third and fourth claims for relief are based on allegations that Eye Health interfered with her FMLA and OFLA rights because it refused to restore her to her original position or to an equivalent position upon her return from leave, "and/or discharged Plaintiff because she took medical leave." Amended Complaint ¶ 19.

Eye Health asserts that it is entitled to summary judgment

on these claims because Ms. Alexander has not established a prima facie case of retaliation based on the exercise of her right to take protected leave.

There is no cause of action for retaliation under OFLA. Stewart v. Sears, Roebuck and Co., CV 04-428-HU (April 15, 2005); Loumena v. Les Schwab Tire Centers of Portland, Inc., CV01-856-KI (October 2, 2003); Denny v. Union Pacific Railroad, CV 00-1301-HU (F & R October 31, 2002, adopted by Jones, J., January 30, 2003).[3]

Eye Health argues that Ms. Alexander has failed to establish a prima facie case of retaliation under FMLA, and cites retaliation cases as authority. Ms. Alexander's response addresses those arguments. However, Eye Health has applied the wrong standard to this claim. A claim alleging that an employee was terminated in violation of FMLA is not analyzed under the "discrimination" or "retaliation" provisions of FMLA. Bachelder v. America West Airlines, Inc., 259 F.3d 1112 (9th Cir. 2001). The discrimination provision, 29 U.S.C. § 2615(a)(2), makes the employer liable for discriminating against any individual for "opposing any practice made unlawful by this subchapter[.]" The

_____

[3] The court is aware of Yeager v. Providence Health System Oregon, 195 Or. App. 134, rev. denied, 237 Or. 658 (2004), which recognized the existence of an OFLA retaliation claim. However, in Stewart v. Sears, Roebuck & Co., CV 04-428-HU, I rejected the analysis in Yeager, on the ground that a retaliation cause of action is not made an unlawful practice in the OFLA statutes themselves, so that a BOLI regulation purporting to create a retaliation cause of action under OFLA, OAR 839-009-0320(3), is beyond the authority delegated to BOLI by the legislature.

12   - OPINION AND ORDER

retaliation provision prohibits discrimination against any individual for instituting or participating in FMLA proceedings or inquiries. 29 U.S.C. § 2615(b). A claim that an employer visited negative consequences on an employee because she has used FMLA leave is covered under the FMLA provision governing "interference," 29 U.S.C. § 2615(a)(1). Bachelder, 259 F.3d at 1124. Under this provision, it is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided by this subchapter." The McDonnell Douglas burden-shifting framework for employment discrimination and retaliation claims is inapplicable to claims under § 2615(a)(1). Xin Liu v. Amway Corp., 347 F.3d 1125, 1135(9th Cir. 2003).[4]

When an employee alleges that her FMLA leave was impermissibly considered in the decision to terminate her, courts in this jurisdiction apply the standard set forth by the Department of Labor in 29 C.F.R. § 825.220(c). Xin Liu, 347 F.3d at 1135. Accordingly, a triable issue of material fact requires a showing by the plaintiff that her taking of FMLA-protected leave constituted a negative factor in the decision to terminate her. Bachelder, 259 F.3d at 1125.

The first issue is whether Ms. Alexander has failed to meet

---

[4] However, the Court of Appeals has left open the issue of whether McDonnell Douglas analysis applies in an anti-retaliation action under § 2615(a)(2). Xin Liu, 347 F.3d at 1136 n. 10.

her burden of production on this claim because she testified at her deposition that she had no knowledge or information to support a claim that she was discharged because she took medical leave.

Ms. Alexander testified at her deposition that the only reason Eye Health terminated her was that she had exhausted her 12 weeks of FMLA leave. Alexander dep. 93:9-10. Ms. Alexander testified further:

> Q:   And so therefore is your claim only that Eye
>      Health Northwest discharged you because you took
>      that leave?
> A:   Yes.
> Q:   Okay. And my question is, do you have knowledge or
>      information from any source that the reason that you
>      were discharged was because you took the leave?
> A:   No.

Id. at 135:18-25. Eye Health argues that this admission by Ms. Alexander precludes her from asserting the existence of a genuine issue of material fact as to whether the FMLA leave taken by Ms. Alexander was impermissibly considered as a factor in her termination.

The fact that Ms. Alexander cannot testify to first hand knowledge or information from any source that she was discharged because she took FMLA leave, is not a binding admission. She is still permitted through counsel to attempt to develop evidence from which it could be inferred that Eye Health discharged her *because she took leave,* rather than because she *failed to return*

*to work when her leave had expired* as argued by the defendant.

There is no direct evidence that Ms. Alexander was terminated because she took FMLA leave. However, Ms. Alexander argues that she has proffered sufficient circumstantial evidence to create an inference that she was terminated because she took FMLA leave. Ms. Alexander relies on the following:

1. Her own deposition testimony that, other than the reference to 12 weeks on the Leave Request form signed by Ms. Alexander, "no one from Defendant ever told Plaintiff what day her leave was exhausted." Plaintiff's Memorandum, p. 15, citing Alexander Declaration ¶¶ 3, 5; Alexander dep. 135:2-3; Dilbeck dep. 23:8-11(testimony that Ms. Dilbeck does not recall considering calling Ms. Alexander before her leave expired).

2. Her own testimony that "on about" September 28, 2004, she spoke to Ms. Dilbeck, her supervisor, on the telephone and told Ms. Dilbeck she would be released when she went to the doctor on Friday, October 1, and Ms. Alexander's statement in her declaration that during the phone call, Ms. Dilbeck "did not say anything to lead me to believe that my job was in jeopardy." Alexander Declaration ¶ 4. During that same phone call, Ms. Dilbeck told Ms. Alexander to contact

Lonnie Obrasinski when she was ready to come back to work. Alexander dep. 48:14-49:4; 59:13-17; 73:12-13.

A warning from Ms. Dilbeck near the time that Ms. Alexander's leave was due to expire is not generally required of an employer. Plaintiff argues however, that, in the face of Eye Health's knowledge of that date, the failure to say anything when she called in on September 28th, the day the leave was to expire, constituted a false or misleading statement that prevented her from timely returning to work, and thus interfered with her right to be reinstated to her former position.

Ms. Alexander has cited no authority for the proposition that a failure by the employer to remind the employee that her leave is about to expire constitutes a false or misleading statement or that it constitutes interference with the employee's right to be reinstated. Ms. Alexander cites to no statutory or regulatory provision requiring the employer to warn the employee when her FMLA leave is about to expire. The FMLA does not prohibit an employer from promulgating a policy that construes a failure to return from leave as a voluntary resignation. The FMLA does not prohibit an employer from, in Ms. Alexander's words, "waiting for the leave[] to expire so it could terminate" her. Nor is there any requirement in the FMLA that the employer continue to hold an employee's position open after her 12 weeks of leave have expired if the employee miscalculates her return

16  - OPINION AND ORDER

date.  However, the evidence does not stop with a simple failure to advise of the date her entitlement to FMLA leave expired. Defendant allegedly afirmatively told plaintiff to contact Ms. Okrasinski when she was ready to return in response to plaintiff's annoucement on the last day of her leave entitlement that she was coming back 3 days later on October 1, 2006.  A reasonable juror could infer from this, coupled with plaintiff's other evidence that her FMLA leave was a negative factor in the decision to terminate plaintiff.

Ms. Alexander also argues that there is evidence that Eye Health looked unfavorably on her requests for leave, and on her health situation in general. She relies on:

1.  Ms. Alexander's deposition testimony that after she had called in sick because of emotional problems after the death of her husband, Cindy Rowe, Eye Health administrator, and Ms. Armstrong, the operations manager, expressed "concern about time that I had missed."  Ms. Alexander testified that she responded to this comment by telling them she felt that "over the last few months ... I had really improved mentally, and I was trying ... to not miss any more work, and that I could do the job." Alexander dep.

96:3-11.[5]

2.    An episode in the spring of 2004, when Ms. Armstrong
       told Ms. Alexander "something to the effect that
       employees with health problems drive up the cost of
       insurance and that they are liabilities." Plaintiff's
       dep. 129:8-16; Plaintiff's Declaration ¶ 8.

3.    Dr. Bentley's remark after her termination about "your
       knee, your neck, your this and that and other
       surgeries." Plaintiff's dep. 129:19-130:6; Bentley
       dep. 12:15-21.

While the defendant may reasonably argue for a different
inference from this evidence than does plaintiff, and while this
evidence may not by itself raise a material question of fact,
coupled with the other evidence plaintiff has produced as
discussed above, it is sufficient to entitle plaintiff to survive
this motion for summary judgment. I deny the defendant's motion
for summary judgment on the interference claim.

    3.    Wrongful Discharge.

    Ms. Alexander asserts that Eye Health discharged her
because she invoked her rights under FMLA and OFLA. Amended
Complaint, ¶ 26. Eye Health contends that Ms. Alexander cannot
make the required showing to recover under this claim: that 1)

---

[5] The evidence does not indicate when this conversation
occurred.

she exercised an employment-related right of important public interest; 2) that her employment was terminated; and 3) that the requisite causal connection exists between the two events. Shockey v. City of Portland, 313 Or. 414, 422-23 (1993). For wrongful discharge claims, the causation standard is whether a reasonable juror could conclude that plaintiff's exercise of protected activity was a "substantial factor" in the employer's decision to fire the plaintiff. Seitz v. Albina Human Resources Center, 100 Or. App. 665, 674 (1990); Estes v. Lewis & Clark College, 152 Or. App. 372, 381 (1998). "The causal connection is typically based on proximity in time between the protected activity and the employer's action, coupled with attending circumstances that suggest something other than legitimate reasons for the temporal tie." Portland Ass'n of Teachers v. Multnomah Sch. Dist. No. 1, 171 Or. App. 616, 625 (2000).

In this case, the temporal proximity, combined with the evidence discussed above with respect to the interference claim dictates that I should deny the defendant's motion for summary judgment on the wrongful discharge claim.

4.   Eye Health's motions to strike

Eye Health moves to strike evidence proffered by Ms. Alexander involving other employees and their treatment at Eye Health as inadmissible under Rule 404 of the Federal Rules of Evidence. The motion is granted.

19  - OPINION AND ORDER

Eye Health also moves to strike many of Ms. Alexander's responses to Eye Health's Concise Statement of Facts and many of Ms. Alexander's factual statements in her own Concise Statement of Facts, primarily on the grounds that they are sham assertions which contradict Ms. Alexander's deposition testimony, or that they violate LR 56.1 by "stating facts that are not material to Defendant's Motion." Those motions are denied, except for the motion to strike the last sentence of paragraph 19 in plaintiff's declaration, which Ms. Alexander concedes is hearsay. The motion to strike the last sentence of paragraph 19 in plaintiff's declaration is therefore granted.

### Conclusion

I grant defendant's motion for summary judgment (doc. # 22) as it relates to the disability discrimination claim, and I deny the motion as to the interference claim and the worngful discharge claims. Defendant's motions to strike, contained within its Reply Memorandum are GRANTED in part and DENIED in part.


Dated this __3rd___ day of _____Oct._____, 2006.

/s/ Dennis J. Hubel

_____

Dennis James Hubel
United States Magistrate Judge